James L. Buchal, OSB No. 921618
MURPHY & BUCHAL LLP
3425 SE Yamhill Street, Suite 100
Portland, OR 97214
Tel:  503-227-1011 Fax:  503-573-1939
E-mail:  jbuchal@mbllp.com
*Attorney for Joseph Gibson and Russell Schultz*

D. Angus Lee, WSBA# 36473 (*Pro Hoc Vice*)
Angus Lee Law Firm, PLLC
9105A NE HWY 99 Suite 200
Vancouver, WA 98665
Phone: 360.635.6464 Fax: 888.509.8268
E-mail: Angus@AngusLeeLaw.com
*Attorney for Joseph Gibson and Russell Schultz*

**HON. JUDGE STACIE F. BECKERMAN**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| JOSEPH GIBSON, RUSSELL SCHULTZ,<br><div align="right">PLAINTIFFS,</div><br>vs.<br><br>MIKE SCHMIDT, in his official capacity as District Attorney of Multnomah County, Oregon, MULTNOMAH COUNTY DISTRICT ATTORNEY'S OFFICE, and BRAD KALBAUGH, in his official capacity as a Multnomah County Deputy District Attorney,<br><div align="right">DEFENDANTS.</div> | No. 3:20-CV-01580-SB<br><br><br>PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY |

PLAINTIFFS' REPLY IN SUPPORT OF
EMERGENCY MOTIONS
NO.  3:20-cv-01580-SB
Monday, September 28, 2020

## TABLE OF CONTENTS

I.     REPLY INTRODUCTION ............................................................................... 4

II.    SUPPLEMENTAL FACTS ............................................................................... 6

   A.   Mr. Kalbaugh's Admission to Ms. Hoffman. ....................................................... 6

   B.   Mr. Kalbaugh's Continued Refusal to Provide Bill of Particulars or Exhibit List. ........... 7

   C.   Reply Declaration of James L. Buchal. ............................................................... 8

III.   REPLY ARGUMENT IN SUPPORT OF MOTION FOR A TRO ................................. 9

   A.   As the State Prosecution is in Bad Faith, Younger Abstention Does Not Apply. ............. 10

     1)   Plaintiffs Have Suffered Irreparable Injury. ................................................... 10

     2)   The Injury to Plaintiffs is Both Great and Immediate. ....................................... 12

     3)   The Prosecution Was Undertaken in Bad Faith. .............................................. 12

     4)   The Threat to Plaintiffs' First Amendment Rights Cannot be Eliminated by Defense Against the State Prosecution. ............................................................. 21

   B.   Selective Prosecution and Discriminatory Effect Shows Bad Faith. ............................ 22

   C.   Evidentiary Insufficiency of Charges Under Oregon Law. ....................................... 22

   D.   Defendants' Efforts Subvert First Amendment Protections in State Court. ................... 23

   E.   Government Has Not Met Burden of Establishing Nondiscriminatory Purpose. ............. 24

   F.   There Is No Hardship on Defendants. ............................................................... 25

   G.   Continued Prosecution is Not in the Public Interest. ............................................. 25

IV.    REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY ......................... 25

V.     CONCLUSION ........................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485  (1984) ........................... 24

*City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 119 S. Ct. 1624 (1999) ........................... 23

*Cox v. Louisiana*, 379 U.S. 536, 85 S. Ct. 453 (1965) .................................................. 22

*Dennis v. United States*, 341 U.S. 494, 71 S. Ct. 857 (1951) ...................................... 23

*Dombrowski v. Pfister*, 380 U.S. 479, 85 S. Ct. 1116 (1965) .......................................... 4, 14, 15

*Duncan v. Perez*, 445 F.2d 557 (5th Cir. 1971) ...................................................... 20

*Dyson v. Stein*, 401 U.S. 200, 91 S. Ct. 769 (1971) .................................................. 10

*Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) .................................. 11

*Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir. 1981), *cert. denied,* 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981) ...................................................................................................... 14, 17, 18

*Gardetto v. Mason*, 100 F.3d 803 (10th Cir. 1996) ........................................................ 23

*Heimbach v. Village of Lyons*, 597 F.2d 344 (2d Cir. 1979) ..................................... 4, 16

*Krahm v. Graham*, 461 F.2d 703 (9th Cir. 1972) ...................................................... passim

*Kugler v. Helfant*, 421 U.S. 117, 95 S. Ct. 1524 (1975) ......................................... 10, 13

*Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988) ..................................................... passim

*Locricchio v. Evening News Ass'n*, 438 Mich. 84, 476 N.W.2d 112 (1991) ............... 24

*Miller* v. *California*, 413 U.S. 15 (1973) ....................................................................... 17

*Perez v. Ledesma*, 401 U.S. 82, 85, 91 S. Ct. 674 (1971) ...................................... 13, 16

*Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995) ........................................................ 4

*Rowe v. Griffin*, 676 F.2d 524 (11th Cir. 1982) .............................................................. 21

*Shaw v. Garrison*, 467 F.2d 113 (5th Cir. 1972), *cert. denied*, 409 U.S. 1024, 93 S. Ct. 467 (1972) ............................................................................................................................ 10, 13

*Snyder v. Phelps*, 580 F.3d 206 (4th Cir. 2009) ............................................................ 23

*United States v. Crowthers*, 456 F.2d 1074 (4th Cir. 1972) ......................................... 22

*United States v. P.H.E., Inc.,* 965 F.2d 848 (10th Cir. 1992) ....................................... 16

*Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) ....................... 22

*Younger v. Harris*, 401 U.S. 37 (1971) .......................................................................... 14

## Statutes

ORS 165.025 ...................................................................................................................... 22

ORS 166.015 ...................................................................................................................... 22

# I.   REPLY INTRODUCTION

In support of the motion for a Temporary Restraining Order (TRO), Plaintiffs have pleaded in significant detail facts evidencing a bad faith and selective prosecution, beginning with a false affidavit to establish probable cause for arrest and ending with a formal policy not to prosecute riot charges that applies only to those rioting in support of defendants' preferred political messaging.  If that were not enough, plaintiffs file herewith additional factual detail concerning the peculiar circumstances of this prosecution, which only occurred months after the underlying incident because of a direct and unconstitutional plan to silence plaintiffs.

Plaintiffs also cited to the leading cases on the jurisdictional issue in section A of Plaintiff's motion.  Indeed, the foundational cases on the exception to *Younger* abstention were all cited in the motion, *Dombrowski v. Pfister*, 380 U.S. 479, 85 S. Ct. 1116 (1965), *Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir. 1981), *Heimbach v. Village of Lyons*, 597 F.2d 344 (2d Cir. 1979), *Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988), *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979), and *Krahm v. Graham*, 461 F.2d 703 (9th Cir. 1972).

Defendants have responded by (1) straw manning and mischaracterizing the argument and facts supporting the bad faith prosecution claim, (2) failing to address or provide any serious analysis of these cases and the clearly-recognized bad faith exception to *Younger* abstention that applies here; and (3) providing a "factual" outline with scant citation to the record.

Defendants did cite, and relied heavily on, *Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995), but they mischaracterize the case.  There, the Tenth Circuit Court of Appeals remanded back to the trial court for further fact finding to determine if the state prosecution was in fact pursued in bad faith.  Defendants' failure to address any of the relevant case law on the exception to abstention is a clear admission by Defendants that they have no argument on the merits and that

the exception applies.  A comprehensive analysis of case law dealing with the exception is in section III(A) below.

Defendants have failed to identify any harm to Defendants whatsoever from imposition of the TRO.  Defendants have also failed to argue that the continued prosecution is needed for public interest reasons.

Defendants have not contested the disparate effect of the policy on Plaintiffs, instead resting upon the false proposition that the policy is not retroactive. It is clearly retroactive, having been announced on August 11th and then applied retroactively to the hundreds of arrests commencing after the riots began months before.  Defendants do not and cannot deny that this form of retroactivity shows the policy is selective against Plaintiffs' who demonstrated in favor of conservative political viewpoints.

Defendants have also not denied that the reason for the continued prosecution of Plaintiffs is based on the expressed political viewpoint of Plaintiffs.  It would have been rather easy for Defendants to have filed a declaration from defendant Schmidt or defendant Kalbaugh explaining a non-discriminatory purpose for the prosecution had there been any such purpose.  But there is no non-discriminatory purpose for prosecuting those so self-evidently innocent of a crime.

Had there been *any* violent or tumultuous conduct by either Plaintiff, Defendants could have simply identified it in one of the video exhibits.  The additional declaration from Ms. Aubrey Hoffman, in which she detailed a discussion with defendant Kalbaugh in which he admitted that there was no violent or tumultuous conduct by Mr. Schultz, is further confirmation of the bad faith prosecution.

So too is defendants' extraordinary avoidance of the facts in the criminal proceedings themselves, and the unwillingness to give any effect to plaintiffs' important First Amendment

rights prior to trial.  At the same time, Defendants have now asserted to the State court that Plaintiffs have no State court remedy prior to trial and might only address the unconstitutional application of the riot law post-conviction.  Defendants even inexplicably argue against providing the previously-ordered bill of particulars.

Defendants' actions, before during, and after the bringing of this action, demonstrate that (1) there is no evidence of criminal conduct by Plaintiffs; and the defendants have no reasonable expectation of obtaining a valid conviction, (2) the case was and is being pursued in bad faith, (3) the exception to the abstention doctrine applies.

## II.    SUPPLEMENTAL FACTS

### A.  Mr. Kalbaugh's Admission to Ms. Hoffman.

Ms. Hoffman is Mr. Schultz's lawyer in the state criminal case.  (Hoffman Decl. ¶ 1)  Ms. Hoffman reviewed all discovery and did not see any evidence of any act by Mr. Schultz that was violent or tumultuous in violation of Oregon's riot law. (*Id.* ¶ 1-13)

At a hearing on the motion for a bill of particulars on March 6th, 2020, she personally confronted Mr. Kalbaugh about the lack of evidence of violent or tumultuous conduct by Mr. Schultz and request for an explanation for the basis of the charges. (*Id.* ¶ 16-17)  Mr. Kalbaugh did not deny the lack of evidence, he did not assert she was wrong, and he did not identify any violent or tumultuous conduct by Mr. Schultz. (*Id.* ¶ 16-18)  Instead, Mr. Kalbaugh asserted that Mr. Schultz "stood around a fist fight between two *other* individuals at the time of the protest." (*Id.* ¶ 19 (emphasis added)).  Defendants would not dream of prosecuting bystanders to the violence in over a hundred nights of rioting in Portland; they won't even prosecute the rioters.

**B. Mr. Kalbaugh's Continued Refusal to Provide Bill of Particulars or Exhibit List.**

Defendants were ordered (orally on March 6, 2020 and in writing on August 25, 2020) to identify at the very least the exact time at which plaintiffs' conduct supposedly transcended the First Amendment-protected conduct (confirmed by Judge Lavin) and became "riot".  The State also agreed to present an exhibit list.  (*See* Exhibit 43 to Reply Declaration of James L. Buchal ("Reply Buchal Decl."); *see also* Reply Buchal Decl. ¶ 14.) After Defendants filed a superficial and meaningless bill of particulars in State court, Plaintiffs filed a motion to have the court order Defendants to provide a bill of particulars in compliance with court order.  (*Id.* Ex. 44.)

To date, no exhibit list has been provided.  And instead of simply producing a meaningful bill of particulars and identifying the allegedly riotous conduct, the Defendants filed STATE'S RESPONSE IN OPPOSITION TO DEFENDANT GIBSON'S MOTION TO COMPEL THE STATE TO PRODUCE A SUFFICIENT BILL OF PARTICULARS. (Reply Buchal Decl. Ex. 45.)  Ignoring that a bill of particulars had already been ordered, Defendants argued that "Oregon case law does not contemplate defense's request for a bill of particulars under these circumstances" (*Id.* at 5.)

Defendants further argued "Mr. Gibson may move the court to require the state to elect a theory of guilt *at trial*." (*Id.* at 4)  Finally, Defendants argued against any pretrial remedy in State court and asserted that the only State remedy for Mr. Gibson and Mr. Schultz is to challenge the constitutionality of the law "as applied" to them post-trial via "a motion in arrest of judgement to be made after a plea or verdict of guilty" (*Id.* at 4). "Thus, [Mr. Schultz' and Mr. Gibson's] procedural remedy to challenge ORS 166.015 as applied is via a motion in arrest of judgment." (*Id.*).

Defendants have also announced an intent to attempt to delay trial into 2021.  (Reply Buchal Decl. ¶ 19)

**C. Reply Declaration of James L. Buchal.**

In a reply declaration, Mr. Buchal provides further information concerning the circumstances of the criminal prosecution, including:

- That it was widely reported that the timing of the prosecution and arrest, immediately prior to a large scheduled right-wing demonstration in Portland, was designed to chill the participation of Plaintiffs and others  (Reply Buchal Decl. ¶ 3);

- That defendants initially proceeded on a "criminal information" which would have given plaintiffs the opportunity for a preliminary hearing, but then obtained a grand jury indictment cutting off that right after the involvement of Mr. Buchal (*id.* ¶ 4);

- That not only did defendants refuse to provide evidence from Plaintiffs to the grand jury, they also refused to allow testimony by the two victims who had been attacked by Antifa at Cider Riot on May 1ˢᵗ (*id.* ¶ 7); and

- That the one hearing eventually held in the criminal case confirmed no interest upon the part of the Multnomah County court in addressing the vital First Amendment issues prior to trial (*id.* ¶¶ 11-16 & Ex. 47).

Mr. Buchal also provides additional examples of the pattern and practice of Portland authorities, including defendants, the Mayor overseeing the Portland Police Bureau, and the Portland Police Bureau, to attack and disadvantage those holding right-of-center political views, while assisting and favoring the Antifa contingent, including:

- Defendants' willingness to "throw the book" at right-of-center individuals who utilize a gun at a protest, while dropping charges against those who utilize guns on the Antifa side (unless they actually kill someone) (*id.* ¶¶ 21-27);

- Efforts by Portland authorities to facilitate left-wing protest and allow unlawful conduct, while handicapping right-wing protest, some attracting national attention, most recently this weekend (*id.* ¶¶ 28-32, 38-41, 43-47);

- The bare fact that out of nearly 1,000 arrests during the left-wing protests that have been going on for months, there have been only 19 prosecutions, some of which are of right-wingers (*id.* ¶ 34);

- That these astounding results are the product of the non-prosecution policy being retroactively applied (prior to its August 11th announcement) by defendants (*id.* ¶ 35); and

- An extraordinary and unprecedented finding by the U.S. Department of Justice that Portland has "permitted violence and destruction of property to persist and have refused to undertake reasonable measures to counteract criminal activities" (*id.* ¶ 42);

Mr. Buchal also expresses that media coverage of events in Portland is so biased, in part because of Antifa attacks on journalists who depart from the approved "police brutality" narrative, that this Court may have difficulty understanding just how much Portland's law enforcement and justice system have departed from all constitutional constraints barring viewpoint-based attacks on Oregon citizens. (*Id.* ¶¶ 48-49.) These are extraordinary times, that make special demands upon the federal judiciary, as the only remedy for American citizens when state institutions fail so dramatically. (*See id.* ¶¶ 50-53.)

## III.   REPLY ARGUMENT IN SUPPORT OF MOTION FOR A TRO

Unlike in any reported case that can be found, Defendants here have enacted a policy and practice by which those politically aligned with the Defendants are free to riot every night with advance and public notice that they will be immune from prosecution, while simultaneously Defendants actively prosecute Plaintiffs for political speech under the riot code but can point to no evidence to support the charge. Defendants have even confirmed that the only state court remedy for Plaintiffs is *post-conviction* after trial before a hostile jury pool after a prolonged political smear campaign by the police commissioner. The prosecution here is a brazenly bad faith attack on Plaintiff's First Amendment rights that is causing irreparable, immediate, and great harm which cannot be remedied by defense to the State prosecution. This court has jurisdiction and should use it to protect the rights of the political minority.

## A. As the State Prosecution is in Bad Faith, *Younger* Abstention Does Not Apply.

A federal court has jurisdiction to enjoin state prosecution when (1) irreparable injury is demonstrated, (2) the injury is both great and immediate, (3) the plaintiff demonstrates that the prosecution was pursued in bad faith, and (4) the threat to plaintiff's federally protected right is one that cannot be eliminated by defense against the state prosecution. *Krahm v. Graham*, 461 F.2d 703, 707 (9th Cir. 1972).

Plaintiffs Gibson and Schultz meet each of these circumstances.  Yet, as will be explained, these circumstances tend to overlap in case law application and theory. For example, where bad faith is demonstrated, one need not show irreparable harm separately. *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1972), *cert. denied*, 409 U.S. 1024, 93 S. Ct. 467 (1972). Conversely, where the plaintiff demonstrates extraordinary circumstances along with irreparable injury, a separate showing of bad faith need not be made.  The Court made as much clear in *Kugler v. Helfant*, 421 U.S. 117, 95 S. Ct. 1524 (1975), stating:

> "[The] Court in *Younger* left room for federal equitable intervention in a state criminal trial where there is a showing of "bad faith" or "harassment" by state officials responsible for the prosecution . . . *or* where there exist other "extraordinary circumstances in which the necessary irreparable injury can be shown *even in the absence of* the usual prerequisites of bad faith and harassment.

*Id.*, at 124 (emphasis added).

### 1) Plaintiffs Have Suffered Irreparable Injury.

Irreparable injury, the Supreme Court has stressed, "is a matter to be determined carefully under the facts of each case." *Dyson v. Stein*, 401 U.S. 200, 203, 91 S. Ct. 769, 771 (1971).  The extraordinary circumstances surrounding the prosecutions of Mr. Schultz and Mr. Gibson demonstrate irreparable injury under several different theories: loss of First Amendment freedoms, likelihood of Plaintiffs' success against the charges of riot, and reputational and economic injury.

Irreparable injury sufficient to warrant injunctive relief may be established where there is the loss of First Amendment freedoms, for even minimal periods of time. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).  With respect to the loss of First Amendment freedoms, the Supreme Court has recognized that "[the] timeliness of political speech is particularly important." *Id.*, at 374 n.29. Here, there is no reasonable dispute that the criminal case impacts First Amendment freedoms; and the timing of issuance of the arrest warrants and prosecutions constitutes a particularly egregious chilling of defendants' protected speech. The prosecution and issuance of warrants were conducted immediately prior to a large scheduled right-wing demonstration in Portland for the purported purpose of sending a message to conservative speakers to "keep their event peaceful."

Irreparable injury is also shown where plaintiffs show a substantial likelihood of prevailing on the merits. *Wilson v. Thompson*, 593 F.2d 1375, 1384 (5th Cir. 1979).  As discussed below, Plaintiffs have a near certainty of prevailing on the merits.

Finally, irreparable injury may also be demonstrated by showing reputational and economic injury which exceeds the normal costs and anxiety associated with defending against the criminal prosecution. *See Krahm*, at 707.  Here, the prosecution of Plaintiffs, as part of the concerted publicity campaign by Portland's public officials to demonize Mr. Gibson and Patriot Prayer events, has resulted in the actual targeting, and murder of, citizens who wear "Patriot Prayer" garb. Mr. Buchal's declaration shows that Mr. Gibson specifically, is regularly and incorrectly referred to as a "Nazi."  Mr. Schultz has lost job opportunities. The damage to reputation from the ongoing criminal proceedings against Plaintiffs far exceeds what would be expected for any average citizen facing a simple riot charge.  As a practical matter, there is nowhere

Plaintiffs can go to recover their reputations, or to recover the substantial sums they must invest in fighting these meritless state criminal proceedings.

### 2)  The Injury to Plaintiffs is Both Great and Immediate.

Evidence that supports a finding of irreparable injury or bad faith, will also support a finding that he injury is "great and immediate." See *Krahm*, at 707 (finding the injury from bad faith prosecution was "both irreparable and great and immediate" where resulted in economic loss.).  Great and immediate harm is established when a state prosecution is pursued in bad faith and is pursued "to retaliate for or discourage the exercise of constitutional rights." *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988).

Here, there is no reasonable dispute that Plaintiffs are being treated differently because of the political views they expressed and that all others with stand-alone riot charges, who have expressed the opposite political views, have had their cases dismissed.  The anti-speech timing of the prosecution, the dishonest and incomplete presentation of facts to the reviewing grand jury, and the total failure of defendants or the Multnomah County Court to take Plaintiffs' First Amendment rights seriously further demonstrates the "great and immediate" danger to Plaintiffs' rights here.

Whereas Plaintiffs have demonstrated extraordinary circumstances resulting in irreparable harm that is both great and immediate, federal jurisdiction is warranted.

### 3)  The Prosecution Was Pursued in Bad Faith.

On the one hand, irreparable harm along with extraordinary circumstances constitutes its own separate basis for an exception to *Younger* abstention.  On the other hand, to the extent it is considered as one of several circumstances, irreparable harm is established as a matter of law

where a showing of bad faith prosecution has been made. *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979); *see also Kugler*, at 124.

> [A]s the language of *Younger* makes clear, [] a showing of bad faith or harassment is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in *Younger,* because there is a federal right to be free from bad faith prosecutions. Irreparable injury need not be independently established.

*Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1972), *cert. denied*, 409 U.S. 1024, 93 S. Ct. 467 (1972).

Bad faith is established and, of its own accord, warrants the preliminary injunction of state criminal proceedings, when (1) conduct retaliated against or sought to be deterred is constitutionally protected; and (2) prosecution is motivated at least in part by the purpose to retaliate or deter that conduct. See *Wilson*, at 1387. Here, Plaintiffs' political activity is clearly protected and is at the heart of the criminal charges. Plaintiffs are the only individuals still being prosecuted for stand-alone riot charges; and no individuals of the domestic terrorist group ironically name "Antifa" were ever charged for their conduct during the protest. These facts make clear that the prosecution was and is motivated by a desire to deter political activity.

Bad faith may also be established where "a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler*, at 126 n.6, *see also Perez v. Ledesma,* 401 U.S. 82, 85, 91 S. Ct. 674, 677 (1971). Here, Defendants have no reasonable expectation of obtaining a valid conviction against either Plaintiff, but especially against Mr. Schultz. (See discussion below.) As a result, the prosecution is in bad faith as a matter of law.

While bad faith may be established by showing that a valid conviction could not be obtained, such a showing is not required. That is, a showing that a prosecution was undertaken in bad faith, or to discourage the exercise of constitutional rights "will justify an injunction ***regardless***

*of whether valid convictions conceivably could be obtained*." *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (emphasis added), *cert. denied,* 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981); *see also Lewellen v. Raff*, 843 F.2d at 1108.  That valid convictions could not possibly be obtained here merely underscores the magnitude of the constitutional violation here.

A review of significant cases wherein bad faith was found, and injunction imposed, supports a finding of bad faith here, and therefore a basis for this Court's jurisdiction and injunctive relief.

That a prosecution is motivated by the purpose to retaliate or deter constitutionally protected speech is established where (1) government officials have engaged in a concerted publicity campaign to vilify those engaged in unpopular speech, and those government officials are responsible for or exert influence over the decision to prosecute; or, (2) those engaged in political speech have criticized or campaigned against government officials, and other government officials have subsequently exerted influence on the decision to prosecute. See *Dombrowski v. Pfister*, 380 U.S. 479, 481-82 (1965); *Krahm v. Graham*; see also *Fitzgerald*, at 944; *Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988).

*Dombrowski v. Pfister*, is the U.S. Supreme Court's original example of a bad faith prosecution warranting an exception to the *Younger* abstention rule. *Younger v. Harris*, 401 U.S. 37, 48 (1971).  There, the Court noted probable federal jurisdiction in order "to settle important questions concerning federal injunctions against state criminal prosecutions threatening constitutionally protected expression." *Dombrowski*, at 483.

Dombrowski was the director of a civil rights organization engaged in the locally unpopular cause of advocating for the civil rights of black citizens in the South. *Id.*, at 481-82.  Local governmental agents had undertaken a concerted publicity campaign of public statements with the

effect of frightening off potential members and contributors to the organization. *Id.*, at 488-89. The public statements repeatedly characterized Dombrowski's organization as a subversive or Communist-front organization. *Id.*, at 488.

Here, Plaintiffs advocate for the cause of constitutional conservativism, patriotism, and prayer, values which are becoming as unpopular in Portland as civil rights workers were in the South—right up to and including the murder of adherents.   And just like the Southern officeholders, the Portland politicians characterize plaintiffs as outside agitators not welcome in Portland.

Dombrowski and other civil rights organization members were arrested by local police and charged with violations of the Louisiana Subversive Activities and Communist Control Law and the Communist Propaganda Control Law. Their offices were raided and their files and records seized. *Id.*, at 487.  Dombrowski and the civil rights organization sought injunctive relief alleging that the threats to enforce the statutes were not made with any expectation of securing valid convictions, but rather as part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass the plaintiffs and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Negro citizens of Louisiana. *Id.*, at 482.

The court found that the facts depicted "a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury." *Id.*, at 485-86.

Thus, the Court granted injunctive relief restraining the Governor, police and law enforcement officers, and the Chairman of the Legislative Joint Committee on Un-American

Activities in Louisiana from prosecuting or threatening to prosecute them for alleged violations of the two statutes. *Id.*, at 481-82.  In doing so, the court held, "the abstention doctrine is inappropriate for cases such as the present one where . . . statutes are justifiably attacked . . . *as applied* for the purpose of discouraging protected activities." *Id.*, at 489-90.

Since *Dombrowski*, the circuit courts have applied the bad faith exception in many different contexts, as it has been noted that bad faith can take many different forms.  *See, e.g., Perez v. Ledesma,* at 118 n. 11 (Brennan, J., concurring in part and dissenting in part) ("Bad-faith harassment can, of course, take many forms, including arrests and prosecutions under valid statutes where there is no reasonable hope of obtaining a conviction".)

The controlling Ninth Circuit case finding federal injunctive relief warranted against state criminal prosecutions which threatened constitutionally protected expression is *Krahm v. Graham*, 461 F.2d 703 (9th Cir. 1972); *see also United States v. P.H.E., Inc.,* 965 F.2d 848, 853 (10th Cir. 1992) ("[A] prosecution motivated by a desire to discourage expression protected by the First Amendment is barred and must be enjoined or dismissed, *irrespective* of whether the challenged action could possibly be found to be lawful." (emphasis added)); *Heimbach v. Village of Lyons*, 597 F.2d 344, 347 (2d Cir. 1979) (holding that allegations that criminal prosecution was initiated in bad faith and which resulted in a chill upon the exercise of first amendment rights were sufficient to remove any bar to federal injunctive interference with states court criminal prosecutions.).

In *Krahm*, the owners of newsstands faced multiple prosecutions under the state's anti-obscenity laws. *Krahm v. Graham*, 461 F.2d at 705.  Similar to public officials in *Dombrowski*, the mayor had undertaken a campaign of publicity in order to influence the community so that jurors would more likely convict at trial and to make clear to other public officials how the community felt about obscenity.  *Id.*, 705. As in *Dombrowski*, the mayor in *Krahm* made

unfounded public statements associating the targeted newsstands with a publicly despised organization, namely the Mafia. *Id.*

Noting that the burden of defending the multiple prosecutions, even where those prosecutions were unsuccessful, was sufficient to run the newsstands out of business, the court found bad faith justified injunctive relief. *Id.*, at 707.

Significantly, *Krahm,* unlike the present case, dealt with bad faith prosecution in the context of enforcing obscenity laws. Obscene material, properly defined, however, is beyond the protection of the First Amendment, *Miller* v. *California*, 413 U.S. 15, 23-24 (1973). Thus, the case for federal intervention here is far stronger because this case implicates the very heart of the First Amendment: political speech. Indeed, the prosecutions by Defendants have discouraged plaintiffs from engaging in political speech during a hotly contested election year - which is the exact type of speech that the First Amendment was designed to protect, and certainly constitutes irreparable harm.

Outside of the Ninth Circuit, courts have consistently upheld federal injunctive relief where bad faith has been found. Efforts to suppress political speech through criminal prosecution resulting from the influence of political opponents have been found particularly worthy of federal injunctive relief. *See e.g. Fitzgerald v. Peek*; *Lewellen v. Raff.*

For example, in *Fitzgerald v. Peek,* the Fitzgeralds had openly criticized certain local public officials, and were subsequently prosecuted for embracery and terroristic threats. The evidence indicated that the prosecution would not have been brought but for the improper influence exerted on the prosecutor to seek the indictments by certain local public officials. 636 F.2d at 945. The district court entered a temporary restraining order and, following a two-day hearing, entered a final order permanently enjoining prosecution of Plaintiffs. *Id.*, at 944.

The Fifth Circuit upheld the permanent injunction against the state criminal prosecutions finding sufficient evidence to support the district court's finding that the prosecutions were brought to harass and retaliate against the plaintiffs for their criticism of certain public officials. *Id.*, at 945. In doing so, the court stated, "[a] bad faith showing of this type will justify an injunction regardless of whether valid convictions conceivably could be obtained." *Id.*, at 945.

Like the Fitzgeralds, Plaintiffs in this case have been critical of the local government and views preferred by local officials such as defendant Schmidt.   As in *Fitzgerald*, the evidence indicates that the initial charges would not have been brought but for the improper influence on the prosecutor by Mayor Wheeler, and that charges were only filed against the conservatives, but were not filed against anyone on the Antifa side that is seen on video engaging in violence and assaulting Mr. Gibson.

In *Lewellen v. Raff*, the court also considered evidence that the scheduling and timing of a criminal case against Lewellen, an attorney, was calculated to impede his ability to run the final leg of a political campaign. Lewellen was prosecuted for witness bribery and conspiracy to commit witness bribery. 843 F.2d at 1108. Evidence was presented that prosecutors initiated charges against him because of his race and because of his vigorous conduct in defense of his client facing a rape charge. *Id.*, at 1111.  Evidence also showed that the scheduling of Lewellen's criminal case took place twenty-four (24) days prior to the General Election, in which Lewellen was running as an Independent against a Democratic incumbent. This evidence was taken as proof that the prosecutor desired to discourage Lewellen from exercising his first amendment rights to run for office. *Id*. At 1111-1112.

In holding that the district court's finding of bad faith was not erroneous and was sufficient to justify federal injunctive relief, the court stated that it was "of the opinion that there is a strong

likelihood that Lewellen can establish that his opponent in the senatorial race made reference to this scheduling during the campaign, and that the scheduling was calculated to impede and impair his First Amendment rights." *Id.* at 1111-12. The Eighth Circuit flatly rejected the state's argument that "the sole issue before this Court is whether the prosecutors had reasonable expectation of obtaining a valid conviction of Lewellen." *Id.* at 1112.

As in *Lewellen*, the timing and continuation of the prosecutions against Plaintiffs have been motivated by a desire to impede the exercise of their First Amendment rights, and to keep them from participating in vigorous public displays in support of conservative candidates such as President Trump and conservative policies focused on law and order in downtown Portland during the 2020 election year cycle.

Where a state prosecution is undertaken to deter the exercise of constitutionally protected rights, it may be enjoined regardless of whether the criminal defendant is threatened with repeated or multiple prosecutions. For example, in *Wilson v. Thompson*, officers were attempting to arrest one of the plaintiffs for civil contempt when a fight broke out. The plaintiffs were charged with battery and interfering with an officer's performance of duties. After the preliminary hearing, prosecution of the charges was not pursued, and the cases were rolled over to the court's "dead docket." 593 F.2d at 1377-78.  One of the plaintiffs later filed a civil suit seeking damages for injuries sustained in the altercation. *Id.*, at 1379. The day after being served, the officers went to see the Judge and inquire as to the status of the criminal action. The judge then instructed prosecutors to reactivate the case. The prosecutors reactivated the criminal cases by drawing up new charges against the plaintiffs. *Id.*  The plaintiffs filed an action in federal court to enjoin the state from prosecuting the criminal cases. *Id.*, at 1380.

On abstention grounds, the district court denied the plaintiffs' request for a preliminary injunction. *Id.*, at 1381. The Fifth Circuit reversed the district court's denial of a preliminary injunction and remanded for additional fact finding on the issue of bad faith, holding that the district court had erred in holding that the bad faith exception was unavailable in cases involving a single prosecution. *Id.* "Nearly every Supreme Court case addressing the bad faith exception has described it in terms which indicate that it is not limited to situations of repeated or multiple prosecutions." *Id.*, at 1377.

Just as Plaintiffs are not required to show that they are subject to multiple prosecutions, Plaintiffs are not required to show that the state has no possibility of success at trial in order to warrant the application of the bad faith exception. *Lewellen*, at 1112. Even so, the weakness of the allegations against them may be considered in the court's determination of bad faith. For example, in *Duncan v. Perez*, 445 F.2d 557 (5th Cir. 1971), the prosecutor repeatedly pursued Duncan for a simple battery charge where he had allegedly slapped a boy on the arm. In finding that the re-prosecution of Duncan had been undertaken in bad faith and warranted federal injunctive relief, the Fifth Circuit noted as significant that any violation which may have occurred was so slight that the state did not have a legitimate interest in the re-prosecution, and stated, "any violation that may have occurred was so slight and technical as to be generally reserved for law school hypotheticals rather than criminal prosecutions." *Id.*, at 560.

This case is far, far worse. Plaintiff Schultz has been prosecuted for standing around watching two other men engage in a voluntary fist fight, after which those two shook hands, and Plaintiff Gibson has apparently been prosecuted for holding his arm out while backing away from someone who was later hit by someone else. Nearly every night in Portland, hundreds of Antifa

and BLM members engage in actual violent and tumultuous conduct, which is ignored entirely by Defendants.

In summary, Plaintiffs have established the bad faith of this prosecution.  Plaintiffs engaged in popular speech that has also been critical of Portland's local government officials. The publicity campaign to vilify Plaintiffs in Portland politics coupled with the influence of Mayor Wheeler on the decision to prosecute establishes that the prosecution is motivated by the purpose to retaliate or deter constitutionally protected speech.  Likewise, bad faith is established because the timing of the arrests and prosecution was calculated to restrict Plaintiffs' unpopular speech.  Finally, Defendants have no hope of obtaining valid convictions at trial against either Plaintiff, but especially Mr. Schultz.

4) **The Threat to Plaintiffs' First Amendment Rights Cannot be Eliminated by Defense Against the State Prosecution.**

To show that the threat to plaintiff's federally protected right is one that cannot be eliminated by defense against the state prosecution, it is not necessary that the plaintiff demonstrate multiple or repeated prosecutions.  *Wilson v. Thompson*; *see also Rowe v. Griffin*, 676 F.2d 524, 525-26 (11th Cir. 1982) (multiple prosecutions not required). As demonstrated above and below, the injury is ongoing and the theoretical state court defense against State prosecution does not eliminate the injury to Plaintiff's First Amendment rights from the bad faith prosecution.  Plaintiffs are forced to endure ongoing pretrial, and then trial, without any opportunity to meaningfully address the unconstitutional nature of the prosecution in State court in advance of trial.

Instead, Plaintiffs are forced to endure trial before a jury pool that has been primed to convict by a prolonged smear campaign, and can only vindicate their rights post-conviction, possibly in custody while awaiting the justice the seek here.

## B. Selective Prosecution and Discriminatory Effect Shows Bad Faith.

Plaintiffs' motion gave a detailed analysis of the Fourteenth Amendments prohibition on selective prosecution further evidencing bad faith, citing to *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972); *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973); *United States v. Crowthers*, 456 F.2d 1074 (4th Cir. 1972), *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), *Cox v. Louisiana*, 379 U.S. 536, 85 S. Ct. 453(1965).  Defendants completely failed to deny that the prosecution is selective and has had a discriminatory effect on Plaintiffs, and failed to address any of these cases.

## C. Evidentiary Insufficiency of Charges Under Oregon Law.

Plaintiffs' motion detailed the insufficiency of the evidence in the underlying criminal charge.  Defendant's failed to respond with any analysis of Oregon riot law.  Defendants also failed to identify an evidence of riotous conduct by Plaintiffs.  Instead, Defendants went to State court and argued they should not have to provide a bill of particulars identifying the alleged, and yet unidentified misconduct.

Simply put, Defendants have absolutely no expectation of obtaining a valid conviction against either Plaintiff, but especially Mr. Schultz.  It is abundantly clear that there is zero evidence of Mr. Schultz engaging in violent or tumultuous conduct.  What is clear, is that he was charged in bad faith not only because of his political activity, but also because Defendants needed to charge a total of six individuals in order to charge Riot under ORS 166.015, which requires a minimum of six individuals all engaging in violent and tumultuous conduct.

Note, that the only difference between Riot (a felony) and Disorderly Conduct second degree ORS 165.025(1)(a) (a class B misdemeanor), is whether or not a total of six actors are engaged in violent and tumultuous conduct.

This point is particularly significant in consideration of the unrebutted declaration of Ms. Hoffman (filed three days prior to Defendants' response brief) wherein Ms. Hoffman outlined how she personally confronted Mr. Kalbaugh about the lack of evidence of violent or tumultuous conduct by Mr. Schultz and Mr. Kalbaugh (1) did not deny the lack of evidence, (2) did not assert she was wrong, (3) did not identify any violent or tumultuous conduct by Mr. Schultz, but instead (4) asserted that Mr. Schultz "stood around a fist fight between two other individuals at the time of the protest." (Hoffman Decl. ¶ 15-19)

Of course, standing near a fight during a protest is not a crime. If there was evidence of riot Defendants would simply identify it. They have not identified any evidence of riot because this is a bad faith prosecution unsupported by evidence of riotous conduct by Plaintiffs.

### D. Defendants' Efforts Subvert First Amendment Protections in State Court.

By willfully refusing to identify the alleged riotous conduct, Defendants are subverting First Amendment Protections of Plaintiffs in State court. Jury trials do not extend to all issues, and in particular do not extend to the issue of whether particular speech or conduct is protected by the First Amendment. *See, e.g., City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 731, 119 S. Ct. 1624, 1649 (1999) (reviewing law generally). Indeed, it is long been the law that "[w]hether the First Amendment protects the activity which constitutes the violation of the statute must depend upon a judicial determination of the scope of the First Amendment applied to the circumstances of the case." *Dennis v. United States*, 341 U.S. 494, 513, 71 S. Ct. 857, 869 (1951).

Protecting First Amendment rights requires a court, not the jury, to identify particular conduct implicated in the case which is protected by the First Amendment. *See, e.g., Gardetto v. Mason*, 100 F.3d 803, 817 (10th Cir. 1996) (wrongful termination for speech); *Snyder v. Phelps*, 580 F.3d 206, 221 (4th Cir. 2009) (IIED claims), *aff'd*, 562 U.S. 443 (2011). The state trial court

has proven unwilling and unable to make any such determination, and, as a practical matter, cannot do so unless and until defendants are willing to state what Mr. Gibson and Schultz are alleged to have done in violation of the law.

This refusal even to grapple with the First Amendment issues underscores the great and immediate irreparable injury faced by Plaintiffs.

> "much of contemporary first amendment doctrine, theory, and commentary is devoted to protecting speech from the jury. . . . The common wisdom is that if juries were given more decisional power in [First Amendment cases], either by increasing the range of issues they could consider or by granting juries greater immunity from appellate review, free speech would suffer a crippling blow." Schauer, *The role of the people in First Amendment theory*, 74 Cal L R 761, 765 (1986).

*Locricchio v. Evening News Ass'n*, 438 Mich. 84, 114 n.20, 476 N.W.2d 112, 125 (1991); *see also Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 499 (1984) (an "'independent examination of the whole record' [is required] in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'"). Allowing these prosecutions to go forward will strike a crippling blow not just to Plaintiffs, but to those seeking to spread a conservative message in Portland, Oregon.  That is the objective of defendants' conduct; there is no lawful basis for prosecuting bystanders on the Right in a riot, while allowing the rioters on the Left to go free.

### E.  Government Has Not Met Burden of Establishing Nondiscriminatory Purpose.

The applicable law here states that an injunction should issue unless the government has show "by a preponderance of the evidence that it would have reached the same decision as to whether to prosecute even had the impermissible purpose had not been considered." *Wilson*, 593 F.2d at 1387.  Yet, in the face of overwhelming evidence of bad faith prosecution, Defendants

have fully failed to present any nondiscriminatory purpose for the prosecution and have therefore conceded that they have no lawful prosecutorial purpose.

## F.  There Is No Hardship on Defendants.

Defendants' response advanced no argument or assertion that imposition of the TRO would harm Defendants in any way, and have therefore conceded there is no hardship from imposition of the TRO.

## G.  Continued Prosecution is Not in the Public Interest.

Defendants' response advanced no argument or assertion that continued prosecution was in the public interest and have therefore conceded that there is no public interest rational for continued prosecution.

## IV.    REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY

The primary objection defendants offer to expedited discovery is urging *Younger* abstention, which is addressed above.  The need for expedited discovery is driven, in part, by the present trial date of October 26, 2020.  Defendants' First Request for Production of Documents was served by e-mail and First Class mail on September 17th, and in the ordinary course a response would be due October 20th.  It will be nearly two weeks after service of the requests before this motion is even heard.

Defendants signal in general ways that they regard the discovery as "overbroad," invasive of "confidential criminal indictments,"[1] and "impossibly prejudicial to the defendants". (Objections at 2).  No real explanation of these claims is offered.

---

[1] Article I, § 10 of the Oregon Constitution provides:  "*No court shall be secret, but justice shall be administered, openly* and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation" (emphasis added).  That defendants now make reference to secret indictments may give rise to

Where, as here, Plaintiffs offer evidence of the Mayor's pressuring (through staff) to enhance criminal proceedings against right-wing protesters (Buchal Decl. ¶ 28), there is every reason to believe that the discovery is "impossibly prejudicial" because it will confirm deliberate misuse of law enforcement and prosecutorial powers in blatant violation of Plaintiffs' constitutional rights.  It is not overbroad.

## V.    CONCLUSION

For the foregoing reasons, and the reasons stated in our opening memoranda, this Court should grant the Temporary Restraining Order barring continued prosecution of Plaintiffs, and order expedited discovery.

DATED this 28th day of Monday, September 28, 2020.

*/s/James L. Buchal*
James L. Buchal, OSB No. 921618
MURPHY & BUCHAL LLP
3425 SE Yamhill Street, Suite 100
Portland, OR 97214
Tel:  503-227-1011 Fax:  503-573-1939
E-mail:  jbuchal@mbllp.com
*Attorney for Joseph Gibson and Russell Schultz*

*/s/ D. Angus Lee*
D. Angus Lee, WSBA# 36473 (*Pro Hoc Vice*)
Angus Lee Law Firm, PLLC
9105A NE HWY 99 Suite 200
Vancouver, WA 98665
Phone: 360.635.6464 Fax: 888.509.8268
E-mail: Angus@AngusLeeLaw.com
*Attorney for Joseph Gibson and Russell Schultz*

---

further evidence of bad faith.  At the least, no case has been made for maintaining secrecy and plaintiffs will be pleased to enter into a counsels' eyes only protective order if there are materials properly to be protected from public disclosure.  Plaintiffs frankly suspect that the scale of activity against right-wing demonstrators may be larger than is publicly known.

PLAINTIFFS' REPLY IN SUPPORT OF
EMERGENCY MOTIONS
NO.  3:20-cv-01580-SB
Monday, September 28, 2020

CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 6,977 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this Monday, September 28, 20.

*/s/D. Angus Lee*
D. Angus Lee

**CERTIFICATE OF SERVICE**

I am a citizen of the United States and a resident of the State of Oregon. I am over 18 years of age and not a party to this action. My business address is 3425 S.E. Yamhill Street, Suite 100, Portland, OR 97214.

I certify that on September 28, 2020, the foregoing PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY will be electronically mailed to all parties enrolled to receive such notice.

*s/ Carole A. Caldwell*