James L. Buchal, OSB No. 921618
MURPHY & BUCHAL LLP
3425 SE Yamhill Street, Suite 100
Portland, OR 97214
Tel: 503-227-1011 Fax: 503-573-1939
E-mail: jbuchal@mbllp.com
*Attorney for Joseph Gibson and Russell Schultz*

D. Angus Lee, WSBA# 36473 (*Pro Hoc Vice*)
Angus Lee Law Firm, PLLC
9105A NE HWY 99 Suite 200
Vancouver, WA 98665
Phone: 360.635.6464 Fax: 888.509.8268
E-mail: Angus@AngusLeeLaw.com
*Attorney for Joseph Gibson and Russell Schultz*

HON. JUDGE KARIN J. IMMERGUT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| JOSEPH GIBSON, RUSSELL SCHULTZ,<br>　　　　　　　　　　　　PLAINTIFFS,<br><br>vs.<br><br>MIKE SCHMIDT, in his official capacity as District Attorney of Multnomah County, Oregon, MULTNOMAH COUNTY DISTRICT ATTORNEY'S OFFICE, and BRAD KALBAUGH, in his official capacity as a Multnomah County Deputy District Attorney,<br>　　　　　　　　　　　　DEFENDANTS. | No. 3:20-CV-01580-IM<br><br>PLAINTIFFS' REPLY MEMORANDUM ON JURISDICTION |

PLAINTIFFS' REPLY
MEMORANDUM ON JURISDICTION
NO. 3:20-cv-01580-IM

i

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200 Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

## I. INTRODUCTION

Abstention is only invoked where state proceedings vindicate important state interests. Here, by dismissing every riot-only case related to protest activity except Plaintiffs', and declaring that such cases "have a weak nexus to further criminal activity," Defendants demonstrate that the relief sought here will interfere with no important state interest. Abstention is likewise only invoked where there is an adequate state remedy; yet Defendants admit that the only remedy Plaintiffs have is post-conviction.

Even if all of the elements required to invoke abstention were present, bad faith defeats *Younger* abstention. These prosecutions were initiated in bad faith because there is no hope of obtaining valid convictions and because the prosecutions were motivated by an intent to retaliate for or deter constitutionally protected speech. The prosecution has been a sham since initiation, most obviously with respect to Schultz. The question "what did Schultz do" has been repeatedly asked, but is still unanswered because no evidence of violent or tumultuous conduct exists.

That these prosecutions were initiated with the intent to suppress certain viewpoints held by Plaintiffs is made even more clear by the Defendants' refusal to apply their unconstitutional viewpoint specific non-prosecution policy retroactively to Plaintiffs while at the same time applying it retroactively to defendants who held their favored viewpoint.

Plaintiffs have demonstrated they suffered irreparable harm; and Defendants fail to meaningfully rebut this evidence. This Court has jurisdiction.

## II. STATEMENT OF FACTS

Kalbaugh now admits that "the evidence against [Schultz] did not include show him assaulting anyone." (Dkt. 54, ¶ 12)  At the Grand Jury presentation, Defendants presented no testimony at all describing any activity by Russell Schultz, with the exception of a single,

compound, and leading question to Detective Traynor, where Kalbaugh asked (1) if, when he went through the video of the event, he recognized Joseph Gibson, Matthew Cooper, Russell Schultz, Ian Kramer, Mackenzie Lewis, and Chris Ponte and (2) if, when reviewing the video, he had any doubt that those people were engaging in acts that Detective Traynor personally would describe as violent and tumultuous. (Lee Decl. I/S/O Reply, ¶ 2)  To that single, compound, leading question, calling for a legal conclusion, the detective answered that he had "no doubt." (*Id.*)

Further, Kalbaugh admitted in State Court, "Your Honor, if the State was charging Mr. Gibson with assault, the State can see that Mr. Gibson would have a very good basis to say, "How am I being charged with assault? I don't see anything of me assaulting anyone."" (Dkt. 28, p. 657)

In addition to the circumstances surrounding the initiation of the prosecutions against Plaintiffs, Defendants do not dispute that Kalbaugh has repeatedly declined to file riot charges due to "insufficient evidence" – even though in those cases, there was far greater evidence than there is here. For example, Kalbaugh declined to file charges where his CRIMES entry admits the officer observed the suspect in the middle of the road as part of a "shield wall" during a violent protest. (Dkt. 51, ¶ 18b-d)  Kalbaugh also declined to file charges due to "Insufficient Evidence" where the Trooper observed an individual "pull on" an officer who was attempting to arrest a third party. In declining charges in that case, Kalbaugh wrote, "the only violent and/or tumultuous activity in which [2427010-1] is alleged to have engaged in … would be the action described as pulling on an officer who was attempting to arrest a third party." (*Id.* ¶ 18c)  Kalbaugh again declined to file charges in 2424353-1, due to "Insufficient Evidence," writing to the officer as follows:

> … you describe people engaging in violent acts with multiple other people clearly satisfying the definition of riot. Nothing in your report mentions whether this particular defendant was engaging in the violent acts you describe. Mere proximity to people rioting does not satisfy the legal requirement of "engaging in tumultuous and violent conduct" beyond a reasonable doubt. See for example State ex rel Juve Dept of Wash County v. Saechao, 167 Or 227 (2000).  (*Id.* ¶ 18g)

PLAINTIFFS' REPLY  
MEMORANDUM ON JURISDICTION  
NO.  3:20-cv-01580-IM

2

ANGUS LEE LAW FIRM, PLLC  
9105A NE HWY 99, STE 200 Vancouver, WA 98665  
(P) 360-635-6464 (F) 888-509-8268

It is undisputed that the non-prosecution policy was applied retroactively. It is likewise undisputed that the non-prosecution policy was applied retroactively *only* to cases where the underlying protest activity aligned with Defendants' favored political views. The only accused who did not received retroactive application of the policy are Plaintiffs. While Defendant Schmidt announced MCDA "*won't prosecute people on a riot accusation alone*" (Dkt. 7, p. 50 (emphasis added)), he did prosecute riot accusations alone in Plaintiffs' cases. Zero percent of riot case referrals factually similar to those of Plaintiffs were charged; and 100% of the riot cases which *were* charged by Defendants involved at least one crime in addition to riot. Plaintiffs have received unique treatment because of the political content of their protest related activity.

### III.   THIS COURT HAS JURISDICTION

**A.   Defendants Lack the Elements to Invoke Abstention.**

Defendants fail to respond to any of the abstention exception cases cited by Plaintiffs. Defendants do, however, cite to *Arevalo v. Hennessy*, 882 F.3d 763, 765-766 (9th Cir. 2018), which held abstention to be inappropriate and acknowledged "[a] federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'"

Under *Arevalo*, abstention is only appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding "implicate[s] important state interests"; (3) there is "an adequate opportunity in the state proceedings to raise constitutional challenges"; and (4) the requested relief "seek[s] to enjoin" or has "the practical effect of enjoining" the ongoing state judicial proceeding." *Id.* at 765. Defendants correctly acknowledged that abstention is appropriate only "[w]here ***all*** four elements of the *Younger* exemption doctrine are met." (Dkt. 53, p. 2) (emphasis added)

All four elements are not present here. Defendants fail to demonstrate the second element: that the proceedings implicate important state interests. Indeed Defendants have made the opposite

clear. That the state has no interest in prosecuting riot relating to protest activity is evidenced by (1) the undisputed record of dismissals and non-charged riot cases, and by (2) Defendants' stated basis for their policy on protest related cases:

> "[T]he prosecution of cases relating solely to protest activities, most of which have a weak nexus to further criminality and which are unlikely to be deterred by prosecution, draws away from crucially needed resources." (Dkt 7, p. 30).

Defendants also fail to demonstrate the third required element: that an adequate opportunity exists in the state proceedings to raise Plaintiffs' constitutional challenges. Defendants concede that an adequate opportunity does not exist by admitting Plaintiffs are limited to "post-conviction relief." (Dkt. 53, p. 6) Inadequate pretrial procedures for a judicial assessment of probable cause in light of First Amendment protections is alone grounds for eschewing abstention. *Cf. Page v. King*, 932 F.3d 898, 905 (9th Cir. 2019) ("court erred in abstaining under *Younger* from hearing [plaintiff's] claim that the state is violating his pretrial due process rights").

### B.   Bad Faith Defeats Abstention Even if the *Arevalo* Elements Are Met.

"[E]ven if *Younger* abstention is appropriate, federal courts do not invoke it if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Arevalo*, at 765-66. Bad faith is established when, as here, the prosecutions were pursued without any hope of obtaining a valid conviction. Bad faith is also established when, as here, the prosecutions were initiated in order to retaliate for constitutionally protected speech, *irrespective* of whether a valid conviction might be obtained. *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981); *Lewellen v. Raff*, 843 F.2d 1103, 1112 (8th Cir. 1988); *United States v. P.H.E., Inc.,* 965 F.2d 848, 853 (10th Cir. 1992).

Defendants cite *Perez v. Ledesma*, 401 U.S. 82, 85 (1971) and *Juidice v. Vail*, 430 U.S. 327, 338 (1977) for the proposition that "bare allegations of bad faith and harassment by the

defendants are insufficient to make abstention inappropriate." (Dkt. 53, p. 3).  In those cases, bad faith was not alleged and there was no record to suggest bad faith. *Ledesma,* at 85; *Juidice*, at 338.

Plaintiffs have alleged and proved prosecution was *initiated* in bad faith.  It was initiated without hope of obtaining a valid conviction, and based upon misleading evidence and conclusory legal statements provided to the grand jury in the absence of counsel for the accused.  Second, even if valid convictions could conceivably be obtained, the prosecutions were nevertheless initiated in bad faith because they were motivated by an intent to retaliate for or deter constitutionally protected speech. Finally, Defendants' refusal to apply the non-prosecution policy to Plaintiffs is simply more evidence of discriminatory motive in the initiation of the prosecution.

### 1. Defendants have no hope of obtaining valid convictions.

The prosecutions were initiated in bad faith because Defendants have no hope of obtaining valid convictions. Schultz did not engage in any "physical activity" characterized by "extreme force" whatsoever, let alone any such conduct that tended to "incite a tumult" or threaten an imminent breach of the peace.  Nor did Gibson.

Defendants have yet again failed to identify evidence of violative "conduct" by Schultz. Instead, Defendants' response is limited to the conclusory claim that "the police video" shows Schultz "**taunting** and physically threatening members of the Antifa group in an effort clearly **designed to provoke** a physical altercation." (Dkt. 53, p. 4 (emphasis added))  The exact same conclusory and non-descriptive language is used in Kalbaugh's Affidavit in Support of Arrest of Schultz. (Dkt. 54, p. 10)  The Grand Jury testimony likewise failed to describe any activity by Schultz, other than a single conclusory response from Detective Traynor which simply misrepresented the video and is altogether refuted by the video evidence itself. (Lee Decl. ISO Reply, ¶ 2)

PLAINTIFFS' REPLY  
MEMORANDUM ON JURISDICTION  
NO.  3:20-cv-01580-IM

5

ANGUS LEE LAW FIRM, PLLC  
9105A NE HWY 99, STE 200 Vancouver, WA 98665  
(P) 360-635-6464 (F) 888-509-8268

The video shows no conduct by Schultz that is violent and tumultuous. Additionally, Kalbaugh has now filed a declaration (1) admitting Schultz engaged in no assault, and (2) still failing to provide any description of Schultz's alleged violative conduct. (Dkt. 54, ¶ 12)

Taunting is not a crime, and to the extent its consideration is relevant here, Defendants have not described any "taunting." Nor do Defendants describe what behavior from Schultz constituted "physical threats." In reality, the video relied upon by Defendants is devoid of any evidence of illegal conduct by Schultz. Rather, it shows Schultz simply being present at a protest in a public street, like everyone else. No one else in Portland has ever been prosecuted for riot on such facts; and no lawful conviction could possibly be obtained.

To be guilty of riot under ORS 166.015, one must engage in [1] conduct, that is [2] both tumultuous and violent, and [3] thereby intentionally or recklessly creates a grave risk of causing public alarm. That is to say, the actual conduct (not protected speech) must be "tumultuous and violent" and also that the specific "conduct" in question must intentionally or recklessly create a grave risk of public alarm. Defendants know that under *State v. Chakerian* "[i]t is clear under the statute that a person does not commit the crime of riot if he or she merely is part of a group and five other members of that group engage in tumultuous and violent conduct." 325 Ore. 370, 375 n. 8 (1997). "[T]he state must prove that the person charged actually 'engage[d] in violent and tumultuous conduct.'" *Id*.

Defendants know that the Oregon Supreme Court defined those terms in ways that have no application here. *E.g, Chakerian*, at 377 ("tumultuous" is "marked by violent or overwhelming turbulence or upheaval;" "violent" is "characterized by extreme force" or "abnormally sudden physical activity and intensity"). Defendants know that *conduct* is required, not just speech, *meaning* "**physical activity** that reasonably is perceived by others as threatening an imminent

breach of the peace." *Id.* at *378* (emphasis added).  And Defendants should know that the right to assemble and engage in advocacy in a traditional public forum such as a sidewalk is protected.

Defendants' attempt to find some case support for the prosecutions by asserting that riotous conduct "can consist of interference with a victim's escape or obstruction of persons who might assist the victim." (Dkt. 53, p. 3) That argument is itself bad faith, because Defendants know no such thing occurred here.  The police officer who observed the events at Cider Riot wrote in his police report that "it was clear to me that the people directly involved in the disturbance were there by choice and were free to leave or go inside the Cider Riot." (Dkt. 52, p. 160 & 238)  This is obvious from the videos.  Further proof of bad faith is Defendant Kalbaugh's acknowledgment, when declining to file charges in 2424353-1 for insufficient evidence, that "Mere proximity to people rioting does not satisfy the legal requirement of 'engaging in tumultuous and violent conduct' beyond a reasonable doubt." (Dkt. 51, ¶ 18g)

Cases about criminal gangs or groups (not protest activity) where the gang members located a single victim in a physically confined location and then attacked the victim while actively blocking attempted escape and/or aid cannot be applied in good faith here.[1]

---

[1] In *State v. Chavez*, 65 Or. App. 534, 537 (1984), Chavez and seven men drove a car "onto [victim]'s driveway," all eight men got out of the car and walked further onto victim's property, at which point Chavez pointed the victim out to the other men saying "this guy right here." Chavez (and four of the seven other men) then personally attacked the victim while the other men "prevent[ed] other friends of [victim] from coming to his aid."
 In *State v. Hicks*, 120 Or. App. 345, 347-348 (1993), Hicks along with other "gang members" "beat the victim" while in a grocery store.  Hicks was accompanied by several other gang members who during the attack in the grocery store aisle "crowded around the victim and his attackers" so the victim could not get away from the assault. *Id*.  While upholding Hicks' conviction, the court noted that "[m]ore is required to sustain a riot conviction than simply a showing that bystanders or spectators gathered around a fight," but acknowledged when the other gang members "surrounded" the victim inside the store, they prevented with the victim's escape.
 And in *State ex rel. Juvenile Dep't of Washington Cty. v. Saechao*, 167 Or. App. 227 (2000), a group of cousins targeted a boy for assault, came up behind the victim a few feet and stood about six or seven feet away from him. *Id*.  After three of the cousins attacked the victim, he "tried to

The grand jury's approval cannot overcome fatal factual and legal defects to destroy bad faith. *P.H.E., Inc.*, 965 F.2d at 858. In *P.H.E.*, the government argued that "the final decision to seek an indictment was based on independent review of the evidence by Benson and the grand jury, and thus the indictment [could not] have been improper." *Id.* at 858. The Tenth Circuit responded: "The court may not permit vindictiveness to be hidden behind procedural cosmetics," and went on to hold "where, as here, a prosecution is premised on the fruits of constitutionally tainted behavior, we cannot permit the prosecution to continue, notwithstanding attempts to launder the taint by presenting the fruits to an independent prosecutor." *Id.* at 858-859.[2] Nor can "judicial authorization" sustain Defendants' decisions here (*cf.* Dkt. 53, p. 5), when the only judicial authorization here was induced by Defendants' false accusations of physical misconduct. (*See* Dkt. 6, ¶ 85 & Ex. 6.)

### 2. Defendants were motivated by an intent to deter constitutionally protected speech when they initiated these prosecutions: Selective Prosecution.

The prosecutions here were motivated by the intent to retaliate for and deter Plaintiffs' protected speech. Defendants do not dispute (1) the timing in bringing the charges to inhibit further political speech, (2) the special interest taken in Gibson, (3) the undue influence of the Mayor in

---

run away but his escape was blocked" by the wall and the other cousins. *Id.* at 229-30 (emphasis added). At trial, the state presented a diagram of the scene showing how the five cousins had blocked his attempted escape during the attack. *Id.* at 234. Due to the active blocking of an attempted escape following a group attack on a single person in a confined space, the conviction was upheld. That case established the outer limits of the riot statue, stating: "Admittedly, this is a close case… It is also fair to say that youth's conduct was violent, because it was characterized by "abnormally sudden physical activity and intensity."" *Id.* at 236.

[2] Defendants' reliance upon *Aydiner v. Giusto*, 401 F. Supp. 2d 1129 (D. Or. 2005), is also misplaced. Plaintiffs there produced no evidence of bad faith—indeed, the prosecution's decision to obtain an arrest warrant for murder and sexual assault was predicated upon matching DNA evidence at the scene of the crime. *Id.* at 1134.

requesting charges be brought, and (4) the absence of any charging of Antifa members who were present and involved in actual criminal conduct during the same incident.

Defendants make no effort to distinguish cases like *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989) and *United States v. Falk*, 479 F.2d 616, 617, 621-623 (7th Cir. 1973), where evidence of discriminatory intent was found on just these facts: the government maintained a policy of not prosecuting those who did not oppose the government.

Instead, Defendants invoke *State v. Ness*, 652 F.2d 890 (9th Cir. 1981) and *State v. Kadderly*, 176 Or. App. 396 (2001), but these cases are easily distinguished. *Ness* rejected a selective prosecution case where the defendant "failed to show a single instance of similarly situated . . . violator who had not been prosecuted," and also did not show any First Amendment related motive. *Ness*, at 892. Here, the video shows a crowd of Antifa who were not prosecuted, but who were engaged in far worse conduct than Plaintiffs. Plaintiffs have also provided clear evidence of discriminatory motive. *Ness*'s case, by contrast, was so weak he would not even present evidence before the trial court. *Id.*

As for *State v. Kadderly*, 176 Or. App. at 409, the court held only that "a prosecutor, in exercising pretrial charging discretion, legitimately may consider a defendant's noncooperation in investigating and prosecuting other crimes and other offenders." "[T]he prosecutor was exercising leniency as a reward for those who cooperated in the prosecution of the more culpable offenders and was prepared to prosecute all others." *Id.* at 405. *Kadderly* has no application here.

Finally, Defendants argue that the Plaintiffs lack standing to contest the refusal to apply the nonprosecution policy because by its terms, the policy applied to "current protests." (Dkt. 53, p. 8). It is undisputed that the policy was applied retroactively to riot cases not arising from the "current" protests, but from protests months earlier. Cases were retroactively dismissed if they

originated from a protest Defendants approved of, but not if they originated from a protest Defendants did not approve of. That is quintessential viewpoint-based discrimination.

### C. Irreparable Harm.

Plaintiffs have adequately demonstrated irreparable harm in prior briefing, leading Defendants to cite comments made by Gibson to a reporter in 2019. (Dkt. 53, p. 7) Gibson's bravado is irrelevant, for in First Amendment retaliation cases, the question is whether the prosecution would inhibit a person of ordinary firmness from protected conduct. "Ordinary firmness" is an objective standard that will not "allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Moreover, "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo*, 882 F.3d at 767. Here, Schultz was arrested by U.S. Marshals and incarcerated, suffering irreparable harm.

## IV.   CONCLUSION

> "It is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups . . . by selective enforcement of an extremely broad prohibitory statute."

*Cox v. Louisiana*, 379 U.S. 536, 557-58 (1965). In those instances, selective prosecution becomes a weapon to punish those harboring beliefs with which the administration in power may disagree. *United States v. Berrios*, 501 F.2d 1207, 1209 (2d Cir. 1974). For the foregoing reasons, and the reasons stated in our opening memoranda, this Court should accept jurisdiction.

DATED this 8th day of January, 2120.

*/s/ D. Angus Lee*
D. Angus Lee, WSBA# 36473 (*Pro Hoc Vice*)
Angus Lee Law Firm, PLLC
9105A NE HWY 99 Suite 200

Vancouver, WA 98665
Phone: 360.635.6464 Fax: 888.509.8268
E-mail: Angus@AngusLeeLaw.com
*Attorney for Joseph Gibson and Russell Schultz*

<u>/s/James L. Buchal</u>
James L. Buchal, OSB No. 921618
MURPHY & BUCHAL LLP
3425 SE Yamhill Street, Suite 100
Portland, OR 97214
Tel:  503-227-1011 Fax:  503-573-1939
E-mail:  jbuchal@mbllp.com
*Attorney for Joseph Gibson and Russell Schultz*